**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MATTRESS DIRECT, INC.** | |
| **AND MATTRESS DIRECT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-883-JWD-RLB** |
| **THE NORTHERN INSURANCE COMPANY OF NEW YORK AND SOUTHERN INSURANCE COMPANY** | |

**RULING AND ORDER**

This matter comes before the Court on the *Motion for Summary Judgment on Behalf of The Northern Insurance Company of New York Pursuant to Fed. R. Civ. P. Rule 56* ("*Motion for Summary Judgment*") (Doc. 15) filed by Defendant The Northern Insurance Company of New York ("Northern Insurance" or "Defendant"). Plaintiffs Mattress Direct, Inc. and Mattress Direct of New Orleans, Inc. (collectively, "Plaintiffs" or "Mattress Direct") oppose the motion. (Doc. 17.) Defendant has filed a reply. (Doc. 18.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is denied.

## I. Relevant Factual and Procedural Background

### A. Factual Background

The basic facts are not disputed. Plaintiffs operate a multi-state corporate retail business that sells mattresses and other bed accessories throughout Louisiana and Mississippi. (Defendant's *Statement of Material Facts for Which There Exists No Genuine Issue for Trial* ("*SMF*"), Doc. 15-2 at 1.)[1] From May 3, 2011 to May 3, 2014, Northern Insurance provided Plaintiffs with successive

---

[1] M.D. La. LR 56(f) provides in relevant part, "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Here,

commercial insurance policies. (Doc. 15-2 at 1.) Included in the Northern Insurance policy was a provision providing coverage for thefts committed by an employee of Plaintiffs. (Doc. 15-2 at 2.) The provision at issue provided, "**Discovery Period For Loss** – We will pay only for covered loss discovered no later than one year from the end of the Policy Period." (Doc. 15-2 at 2; Doc. 15-6 at 91.)

The instance suit arises out of an alleged embezzlement of funds by a Mattress Firm employee beginning in May 2012 through December 2018. (Doc. 15-2 at 1–2.) Plaintiffs claim the employee wrote a total of 442 fraudulent checks to her husband totaling $1,232,868.03. (Doc. 15-3 at 2; *Aff. Of Ty Hingle*, Doc. 17-1 at 1.) Plaintiffs seek to recover damages totaling $187,150.04 for the amount allegedly stolen by the employee during the Northern Insurance policy period. (Doc. 15-3 at 5.)

Plaintiffs did not discover the alleged theft until December 2018. (Doc. 15-2 at 2.) Plaintiffs assert they were unable to discover the fraudulent transactions until December 4, 2018 because the employee concealed the fraud through falsifying accounting records and tying the fraudulent transactions to high volume Mattress Direct vendors. (*Aff. Of Ty Hingle*, Doc. 17-1 at 1–2.) It was not until Plaintiffs hired a CFO services firm to provide forensic accounting services that Plaintiffs

---

Plaintiffs fail to submit an opposing statement of material facts, as required by M.D. La. LR 56(c). Thus, each of Defendant's *SMF* are deemed admitted. "However, case law recognizes that the Court can still consider record evidence to determine if there is a factual dispute." *Braud v. Wal-Mart Stores, Inc.*, No. 17-320, 2019 WL 3364320, at *4 (M.D. La. July 25, 2019) (deGravelles, J.) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998) (holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment." (citation omitted)); *Porter v. Dauthier*, No. 14-41, 2015 WL 5611647, at *8, *13 (M.D. La. Sept. 23, 2015) (deGravelles, J.) (relying on *Smith* and holding, when Plaintiff's opposition left "no doubt about his disagreement with either the basis or import of each of Plaintiff's undisputed facts," that Plaintiff would have forty-eight hours from the issuance of the ruling to comply with the Local Rule, and ultimately denying the motion for summary judgment).

discovered the fraudulent transactions committed by their employee. (Doc. 17-1 at 2.) Plaintiffs notified Northern Insurance of the fraudulent transactions on October 21, 2019. (Doc. 15-2 at 2.)

### B. Procedural Background

Plaintiff filed the *Petition for Damages* (Doc. 15-3) with the 19th Judicial District Court of East Baton Rouge Parish alleging that both Northern Insurance and Southern Insurance Company breached their obligations under the insurance policies issued to Plaintiffs and breached duties imposed by Louisiana statutes. (Doc. 15-3.) The case was subsequently removed to this Court. (Doc. 1.)

Defendant, Northern Insurance, filed the instant *Motion for Summary Judgment* requesting that the Court dismiss Plaintiff's claims against Northern Insurance with prejudice pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 15.) Attached to the *Motion for Summary Judgment* is the *Affidavit of Robert Knipp* which includes the Northern Insurance policy at issue (Doc. 15-6).

Mattress Direct responded by filing *Plaintiffs' Memorandum in Opposition to the Northern Insurance['s] . . . Motion for Summary Judgment* ("*Opposition*") (Doc. 17.) Attached to the *Opposition* is the *Affidavit of Ty Hingle*, the owner and operator of Mattress Direct. (Doc. 17-1.)

Defendants responded with the *Reply Memorandum to Mattress Direct's [Opposition] (R. Doc. 17)* ("*Reply*") (Doc. 18.)

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material

3

facts. . . .   [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III.   Parties' Arguments

### A.  Defendant's Motion for Summary Judgment (Doc. 15)

In the *Motion for Summary Judgment*, Defendant first asserts that the Northern Insurance policy is "clear and unambiguous and should be applied as written." Defendant's policy states that it will pay for "[l]oss of . . . 'money' . . . resulting directly from employee dishonesty" and "[l]oss of 'money' . . . resulting directly from 'theft.'" (Doc. 15-6 at 88.) The policy defines "theft" as "any act of stealing." (Doc. 15-6 at 93.) Employee dishonesty is defined in the policy as "dishonest acts committed by an "employee" acting alone. . . with the manifest intent to [c]ause you to sustain loss; and also [o]btain financial benefit." (Doc. 15-6 at 89.) Defendant's policy also contains "Crime Conditions" which includes the following condition: "Discovery Period for Loss — We will pay only for covered loss discovered no later than one year from the end of the Policy Period."

4

(Doc. 15-6 at 91.) Northern asserts that the provisions of its insurance policy are "clear and unambiguous and as such, this Court should apply those terms as written." (Doc. 15-1 at 5.)

Next, Defendant argues that the alleged theft is not covered under the Northern Insurance policy because Plaintiffs failed to report the theft within one year of the end of the policy period. (Doc. 15-1 at 5.) The Northern Insurance policy ended on May 3, 2014. (Doc. 15-2 at 1.) Plaintiff discovered the theft in December of 2018 and reported the theft to Defendant on October 21, 2019. (Doc. 15-2 at 2.) Because Plaintiffs discovered the theft over four years after the end of the Northern Insurance policy, Defendant asserts that the theft is not covered under the policy. In support, Defendant relies on cases in which courts have allowed discovery of an event or reporting of an event to an insurer within a specific time period to trigger coverage. (Doc. 15-1 at 6.) Defendant relies most on *Provincial Hotels, Inc. v. Mascair*, 98-2420, (La. App. 4th Cir. 4/21/99), 734 So. 2d 136, a case involving a similar insurance policy that covered losses only if discovered within one year from the end of the policy period. (Doc. 15-1 at 7.) Defendant discusses the similarities between the policy in *Provincial Hotels* with the policy at issue and maintains that Plaintiffs failed to meet the requisite discovery condition of the Northern Insurance policy to trigger coverage. (Doc. 15-1 at 7.) Further, Defendant argues that Plaintiffs agreed to the Northern Insurance policy coverage and thus "had a duty to read its policy and is assumed to know the terms of that policy." (Doc. 15-1 at 7.)

### B.  Plaintiffs' Opposition (Doc. 17)

Plaintiffs oppose the motion on three main grounds.  First, and primarily, they argue that the Discovery Period for Loss" provision of the Northern Insurance policy violates Louisiana Revised Statutes 22:868(B).  Second, Plaintiffs maintain that this policy provision is invalid by analogy to the doctrine of *contra non valentem*.  And third, Plaintiffs contend that Northern

Insurance was not prejudiced by any delay.  Because the Court finds that this motion turns on the

first issue, it will limit its discussion to that argument.

Louisiana Revised Statutes 22:868(B) provides:

> No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim, as defined in R.S. 22:1692, and arises under any insurance classified and defined in R.S. 22:47(6), (10), (11), (12), (13), (15), and (19) or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.

The statute further states that any agreement or condition in violation of this provision is void. La.

R.S. 22:868(C). Plaintiffs assert that this statute renders the Northern Insurance policy provision

limiting the discovery of loss to one year after the policy period ends void and that the court should

enforce the rest of the insurance contract while ignoring the void provision. (Doc. 15-1 at 4.)

Plaintiffs argue that the facts at issue fall within La. R.S. 22:868 because Plaintiffs have a

first party claim under a policy type classified in La. R.S. 22:47(6). Further, because "the policy

period plus the discovery period equal exactly twenty-four months, that means that any loss

beginning after the end of the first day of the policy period would be subject to a time limitation

of less than twenty-four months." (Doc. 17 at 4.) Thus, Plaintiffs contend that Defendant's

"Discovery Period for Loss" provision unlawfully limits the insured to bring their claim within

only twelve months.

Plaintiffs also assert, "Louisiana Courts have applied La. R.S. 22:868 (or previous versions

of the statute[)] to allow insureds to recover despite non-compliance with certain time limitations

in the underlying policy."[2] (Doc. 17 at 5.) Plaintiffs point to *Magnolia Management Corp. v.*

---

[2] Louisiana Revised Statutes 22:629 was renumbered to 22:828 in 2008.

6

*Federal Insurance Co.*, No. 06-0447, 2007 WL 4124496 (W.D. La. Nov. 19, 2007), as support

that a La. R.S. 22:868 analysis is triggered by the "Discovery Period for Loss" provision. (Doc. 17

at 4.) Plaintiffs also use *Louette v. Security Industry Insurance Co.*, 361 So. 2d 1348 (La. App. 3d.

Cir. 1978) to show that courts have relied on La. R.S. 22:868 to void insurance provisions that

impermissibly limit the prescriptive period in which an insured can bring an action against its

insurer. (Doc. 17 at 5.)

Plaintiffs maintain that the determination of whether a provision is void under La. R.S.

22:868 depends on whether the policy is a claims-made or occurrence policy. Plaintiffs rely on

*Anderson v. Ichinose*, 98-2157 (La. 9/8/99), 760 So. 2d 302, to support this contention. Plaintiffs

argue the Defendant's provision at issue is an occurrence policy, and as such it should be voided

because "[c]ourts are inclined to void provisions that limit insured's rights to bring claims against

their insurers when they appear in 'occurrence' policies." (Doc. 17 at 6 (citing *Treo Staffing, LLC

v. Axis Surplus Ins. Co.*, No. 15-332, 2016 WL 923112 (M.D. La. Mar. 10, 2016); *Hood v. Cotter*,

08-215 (La. 12/2/08), 5 So. 3d 819).) Plaintiffs assert that although courts are hesitant to void

discovery period for loss provisions in claims-made policy cases because it would effectively turn

a claims-made policy into an occurrence policy, the provision at issue should be voided because it

turns an occurrence policy into a claims-made policy. Plaintiffs point to the provision of the

Defendant's policy which states "We cover loss or damage commencing: a. during the Policy

Period shown in the Declarations; and b. Within the Coverage Territory." (Doc. 17 at 6–7 (citing

Doc. 15-6 at 85).) Because the provision states that the policy insures the occurrence of loss rather

than the making of the claim, Plaintiffs assert that Defendant's policy is an occurrence policy and

the Discovery Period for Loss provision "would thwart the coverage for which they paid, and

transform the policy into something more akin to a 'claims-made' policy in violation of La. R.S. § 22:868." (Doc. 17 at 7.)

### C.  Defendant's Reply (Doc. 18)

Defendant replies that Plaintiffs "fail[ed] to address any ambiguity in the Northern Insurance policy and as such the policy is deemed to be clear and unambiguous." (Doc. 18 at 1.) Defendant asserts that Plaintiffs only argue the unlawfulness of Defendant's policy and Defendant was not prejudiced by the delayed notice of the theft, but Plaintiffs did not address whether the terms of the policy were vague or ambiguous. (Doc. 18 at 2.) Defendant states that the lack of argument on this issue by Plaintiffs means that the Court should accept that Plaintiffs agree Defendant's policy provisions are "clear and unambiguous and should be applies as written." (Doc. 18 at 2.)

Defendants also argue Plaintiffs "incorrectly stated that the policy provision at issue unlawfully limits its right to bring a cause of action against Northern Insurance." (Doc. 18 at 2.) Defendants assert that Plaintiffs misunderstood the policy language and "conflates the language in the contract pertaining to the time the insured has to discover and report a loss within one year from the end of the policy period with an insured's right to file a lawsuit within a statutorily prescribed time period." (Doc. 18 at 3.) Defendant asserts the provision "in no way alters the ability of Mattress Direct to bring a lawsuit against Northern Insurance within a statutorily prescribed timeframe" but instead "it defines the scope of coverage between the parties." (Doc. 18 at 3.)

Defendant urges that the cases relied upon by Plaintiffs in the *Opposition* do not support Plaintiffs because they are factually distinguishable. First, Defendant maintains that the *Magnolia* provision involved a specific timeframe for a legal proceeding to be instituted rather than an extended period for discovery of loss. (Doc. 18 at 3 (citing *Magnolia Management Corp v. Fed.*

*Ins. Co.*, No. 06-447, 2007 WL 4124496, at *1 (W.D. La. Nov. 19, 2007)).) Defendant continues

that the *Magnolia* court "held that the policy language providing an extend period for discovery of

a loss is more favorable to an insured" and the *Magnolia* court "did not find that there was an

unlawful time limitation imposed by the policy language." (*Id.* at 3–4.)  Next, Defendant argues

the *Loutte* case is distinguishable because it involved a policy provision that prevented the insured

from filing suit against the insurer within 60 days of providing proof of loss or after one year from

the date of loss. (Doc. 18 at 4 (citing *Loutte*, 361 So. 2d at 1349).) Because the provision at issue

does not involve a limitation on the right to bring suit within a specific time period nor does it

involve a proof of loss time requirement, Defendant states the holding of *Loutte* does not apply to

this case. (*Id.*) Finally, Defendant asserts that Plaintiffs' reliance on *Anderson v. Ichinose*, 98-2157

(La. 9/8/99), 760, So. 2d 302, and the court's discussion of occurrence versus claims-made policies

is not outcome determinative. (Doc. 18 at 4.)

Defendant compares the Northern Insurance policy to the policies in *Hood v. Cotter*, 08-

215 (La. 12/2/08), 5 So. 3d 819, 820, and *Treo Staffing, LLC v. Axis Surplus Insurance Co.*, No.

15-332, 2016 WL 923112, at *2 (M.D. La. Mar. 10, 2016), and says that the policy at issue

"operates much the same as the policies contained in *Hood* and *Treo Staffing*." (Doc. 18 at 5.)

According to Defendant, each of these cases involve clear and unambiguous provisions similar to

the Defendant's provisions because Defendant's policy "does not prohibit Mattress Direct from

bringing a lawsuit against it but merely defines the scope of coverage between the parties." (Doc.

18 at 5.)  For these reasons, Defendant asks the Court to grant its motion.

IV.    **Discussion**

A.  **Applicable Law**

"Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible." *Hood v. Cotter*, 08-215, p. 11 (La. 12/2/08), 5 So. 3d 819, 825 (citing *Livingston Par. Sch. Bd. v. Fireman's Fund Am. Ins. Co.*, 282 So. 2d 478, 482 (La. 1973)). "This is in accordance with the general principle that, in the absence of conflict with statute or public policy, insurers may be unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract." *Id.* at 825–26. "Unless there is a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume." *Anderson v. Ichinose*, 98-2157, p. 8 (La. 9/8/99), 760 So. 2d 302, 306.

The burden is on the insurer to prove that a loss falls within an insurance policy exclusion. *Estate of Munsterman v. Unitrin Auto & Home Ins. Co.*, 20-209, p. 9 (La. App. 3d Cir. 11/18/20), 307 So. 3d 297, 300–01. A provision of an insurance policy that precludes coverage must be strictly construed. *Id.* at 301. However, "an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Id.* (quoting *N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 05-81, p. 20 (La. App. 1st Cir. 8/23/06), 943 So. 2d 429, 443, *writs denied*, 06-2918 (La. 2/16/07), 949 So. 2d 423, 06-2803 (La. 2/16/07), 949 So. 2d 424). "In the ***absence*** of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid." *Id.* (quoting *Taranto v. Louisiana Citizens Prop. Ins. Corp.*, 10-105, p. 8 (La. 3/15/11), 62 So. 3d 721, 728).

10

In 2007, the Louisiana State Legislature enacted Louisiana Revised Statutes 22:868(B), which provides:

> No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim, as defined in R.S. 22:1692, and arises under any insurance classified and defined in R.S. 22:47(6), (10), (11), (12), (13), (15), and (19) or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.

The statute continues: "Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract." La. R.S. 22:868(C).

As to La. R.S. 22:868(B)'s requirements that the claim be a "a first-party claim, as defined in R.S. 22:1692, and arise[] under any insurance classified and defined in R.S. 22:47(6)," a first-party claim is "a claim made by an insured or a policyholder under an insurance policy or contract that arises out of the occurrence of the contingency or loss covered by the policy or contract." La. R.S. 22:1692. Further, La. R.S. 22:47, in pertinent part, classifies burglary and forgery as a kind of insurance and states: "Insurance against loss or damage by burglary, theft, larceny, robbery, forgery, fraud, or otherwise, including the personal property floater; also coverage of expenses associated with kidnapping or ransom demands." La. R.S. 22:47(6).

Turning to the crux of the motion, "[i]n determining whether an insurance contract is void pursuant to La. R.S. 22:868, the court will consider whether the policy is a 'claims-made' or 'occurrence' policy." *Treo Staffing, LLC v. Axis Surplus Ins. Co.*, No. 15-332, 2016 WL 923112, at *2 (M.D. La. 3/10/2016) (citing *Anderson v. Ichinose*, 760 So. 2d 302 (La. 1999)). The Louisiana Supreme Court has highlighted the distinction between these two policy types:

The major distinction between the "occurrence" policy and the "claims made" policy constitutes the difference between the peril insured. In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the "occurrence" takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.

*Id.* at 305 (quoting Sol Kroll, *The Professional Liability Policy "Claims Made"*, 13 FORUM 842, 843 (1978)).

Several cases illustrate this distinction between claims-made and occurrence-based policies and the relationship of each to La. R.S. 22:868. In *Hood v. Cotter,* 08-0215, (La. 2008), 5 So. 3d 819, the court found that La. R.S. 22:868 did not invalidate certain provisions of a claims-made policy. *Id.* at 829–30. The court found that "the provision in the claims-made policy limiting coverage to those claims made and reported during the policy period does not limit plaintiff's right to bring his suit against [the insurer]. Rather, it provides the scope of coverage bargained for by" the insurer. *Id*. at 820. Further, "the claims-made policy denies coverage to defendant for plaintiff's claim, but it does not itself limit plaintiff's right of action. To hold otherwise would effectively convert a claims-made policy into an occurrence policy and change the bargained-for exchange between the insurer and the insured." *Id.* at 830. "As this court has previously held, claims-made policies are not *per se* impermissible or against public policy, and we do not interpret La. R.S. 22:629 as prohibiting the claims-made policy provision that makes coverage dependent upon a claim being first made and reported during the policy period." *Id.* The court found that "the event that triggered policy coverage simply did not occur during the policy period. La. R.S. 22:[868], which does not mandate coverage. . . was not violated as the claims made coverage provision did not impermissibly limit plaintiff's cause of action." *Id.*; *see also Gorman v. City of Opelousas*, 148

So. 3d 888, 897 (La. 2014) ("Louisiana R.S. 22:868 simply does not mandate coverage where none exists.").

Similarly, in *Treo Staffing*, the insurance policy restricted coverage to losses that were claimed and reported during the policy period. *Treo Staffing, LLC v. Axis Surplus Ins. Co.*, No. 15-332, 2016 WL 923112, at *1 (M.D. La. 3/10/2016). The court held that a claims-made policy that defines the scope of coverage to claims made and reported during the policy period does not violate La. R.S. 22:868 when the policy does not limit the plaintiff's right of action. *Id.* When a claim is not made and reported during the policy period, coverage is not triggered in the first place. *Id.*

Conversely, in *Munsterman*, the insurance policy provision at issue stated: "In case of a loss to covered property, we will not provide coverage under this policy unless your notice of loss is received by us no later than 365 days after the date of the loss." *Munsterman*, 307 So. 3d at 300. The court held that La. R.S. 22:868(B) invalidated the clause and condition in the policy because the statute extends time to assert a right of action against the insured to two years. *Id.* at 301. Thus, the provision was voided, but voiding the provision at issue did not affect the validity of the rest of the insurance contract. *Id.* The court explained that the *Munsterman* policy was an occurrence policy because "the peril insured, i.e. hail, is the occurrence itself. *Id.* at 302. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter." *Id.* The court distinguished the occurrence policy from a claims made policy, such as the policy in *Hood*. *Id.* Although the *Hood* court held that a policy that limits insurance coverage to acts discovered and reported during the policy period is not per se impermissible, the limitation of liability only applies to claims made policies rather than occurrence policies. *Id.* Thus, the *Hood* rule did not apply to the occurrence policy in *Munsterman. Id.*

13

## B. Analysis

Preliminarily, in this case, the policy language clearly and unambiguously covers loss commencing during the policy period (Doc. 15-6 at 85) and excludes coverage for a loss discovered more than one year from the end of the policy period (Doc. 15-6 at 91.) The claim also is a first-party claim because it is a claim made by the insured, Mattress Direct, and arises out of loss covered by the Northern Insurance policy pursuant to La. R.S. 22:1692. It also falls under La. R.S. 22:1692 as insurance against theft.  Thus, the sole remaining question is whether Defendant's "Discovery Period for Loss" provision is void pursuant to La. R.S. 22:868(B) and (C) because it limits the right of action against the insured to less than twenty four months after the inception of the loss.

Having carefully considered the matter, the Court finds that the policy provision at issue is invalid under La. R.S. 22:868(B) and (C) .  Critically, the Northern Insurance policy is not a claims-made policy (like the ones in *Hood* and *Treo Staffing*), but rather, coverage is triggered when a covered loss occurs within the policy period. Specifically, the occurrence of employee theft triggered crime coverage under the policy. (Doc. 15-6 at 88.) The fact that the policy is occurrence based is further evidenced by the provision which states, "We cover loss or damage commencing: a. during the Policy Period shown in the Declarations; and b. Within the Coverage Territory." (Doc. 15-6 at 85).  Indeed, Defendant does not contest Plaintiffs' assertion that the Northern Insurance policy is an occurrence based policy. (*See* Doc. 18 at 4–5.)

Despite the policy being occurrence based, the policy imposes a discovery limitation on the insured to discovery of the loss no more than one year after the end of the policy period.  This contradicts the purpose of an occurrence policy to attach coverage to the occurrence of the loss regardless of when the claim is made. *See Hood,* 5 So. 3d at 827. Because coverage was triggered

14

at the occurrence of the employee's alleged theft during the policy period, the facts of *Hood* and *Treo Staffing* are distinguishable. Nevertheless, like the reasoning from these cases, the Discovery Period for Loss provision alters the bargained for occurrence policy between Defendant and Plaintiffs, and the purpose of La. R.S. 22:868(B) is to protect insureds against provisions that unlawfully shorten their right of action against an insurer in occurrence-based insurance policies. As a result, the Discovery Period for Loss provision is void pursuant to La. R.S. 22:868.

Further, the Northern Policy provision is similar to the policy provision disputed in *Munsterman*. The *Munsterman* provision was an occurrence policy limiting coverage to losses incurred during the policy period. *Munsterman*, 307 So. 3d  at 301. The *Munsterman* insurer asserted that La. R.S. 22:868 was inapplicable because the policy provision did not limit the time or right to file a lawsuit, but instead imposed a one-year notice requirement on coverage. *Id.* Similarly, Defendant here asserts that the Northern Insurance policy imposes a one year discovery period on coverage rather than a one year limitation on the right of the insured to file suit. (*See* Doc. 18 at 3.)

The rationale in *Munsterman* applies to the provision at issue. When the policy at issue is an occurrence policy, coverage automatically attaches when the loss occurs. *Id.* at 302. Thus, the limitation of liability set forth in *Hood* and *Treo Staffing* can only apply to claims-made policies and cannot extend to occurrence policies. *Id.* Just as the policy provision was invalid in *Munsterman*, it should be invalidated here. Further, though the *Munsterman* policy limited coverage to notice within 365 days after the loss occurred, the Defendant's "Discovery Period for Loss" provision similarly limits coverage to one year after the end of the policy period. Both occurrence-based policies impermissibly limited the insured's right of action against the insurer to

a period of less than two years from inception of the loss. Thus, La. R.S. 22:868 applies and the provision is void.

Defendant contends that the occurrence versus claims based determination from *Anderson* "is not outcome determinative." (Doc. 18 at 4.)  Defendant further argues that the provision at issue merely defines the scope of coverage between the parties rather than the ability of Plaintiffs to bring suit against it. (Doc. 18 at 5.)

The Court disagrees with both points.  By limiting Plaintiffs' coverage to one year from the end of the policy period, the discovery provision impermissibly limits Plaintiffs' right of action under La. R.S. 22:868.  Further, *Hood* and *Treo Staffing* limits liability only to claims-made policies, and this limitation does not extend beyond them. Otherwise, La. R.S. 22:868(B) would serve no purpose.

Defendant is correct that two cases relied upon by Plaintiffs (*Magnolia* and *Loutte*) are distinguishable from the facts at issue.  However, Defendant does not distinguish either case in a way that changes the outcome of this ruling.[34]

---

[3] First, Plaintiffs point to *Magnolia* as support for the "Discovery Period for Loss" provision triggering an La. R.S. 22:868 analysis. (Doc. 17 at 4 (citing *Magnolia*, 2007 WL 4124496, at *4).) While Defendant correctly distinguishes the provision at issue and the *Magnolia* provision, (Doc. 18 at 3), it is irrelevant because Plaintiffs do not attempt to analogize the policies. Instead, Plaintiffs merely use *Magnolia* as support for their La. R.S. 22:868 argument because both included a "discovery of loss" provision to trigger coverage. While Magnolia's policies are distinguishable, the case still supports Plaintiffs' point that a "discovery of loss" provision may limit an insured's right of action against an insurer pursuant to La. R.S. 22:868.

[4] Similarly, Plaintiffs rely on *Loutte*, which involved a burial insurance policy provision that required actions for recovery to be brought "prior to the expiration of sixty days after proof of loss has been filed" and "brought within one year from the date of loss or death." (Doc. 17 at 5 (citing *Loutte.*, 361 So. 2d at 1349).) The *Loutte* provision also stated that the sixty day period in which no action could be brought for recovery did not extend the period during which the action must be brought. *Loutte*, 361 So. 2d 1349. The Third Circuit held the provision was void pursuant to La. R.S. 22:629 because the "provision limited the insured rights to a period less than what was allowed by statute" and the default ten year prescriptive period for contractual obligations applied. (Doc. 17 at 5–6 (citing *Loutte*, 361 So. 2d at 1350).) Again, while Defendant's distinguishing of *Loutte* is correct, Plaintiffs only rely on *Loutte* to the extent that it demonstrates that courts use La. R.S. 22:868 to void provisions that fail to comply with the statute. Plaintiffs do not analogize the provision at issue to the *Loutte* provision, so distinguishing *Loutte* is not outcome determinative.

For all these reasons, the Court finds that that the Discovery Period For Loss provision of the Northern Insurance policy violates Louisiana Revised Statutes 22:868(B) and (C). Consequently, Defendant is not entitled to judgment as a matter of law, and its motion must be denied.

V.      **Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment on Behalf of The Northern Insurance Company of New York Pursuant to Fed. R. Civ. P. Rule 56* is **DENIED.**

Signed in Baton Rouge, Louisiana, on <u>March 30, 2021</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**